FILED

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

99 FEB -8 AM 9: 44

U.S. DISTRICT COURT
N.D. OF ALABAMA

MICHELLE SPIVEY,                    )
                                    )
        Plaintiff,                  )
                                    )
vs.                                 )    Case No. CV 98-TMP-0500-M
                                    )
BEVERLY ENTERPRISES, INC.,          )
d/b/a/ Boaz Health &                )
Rehabilitation Center,              )
                                    )    ENTERED
        Defendant.                  )
                                         FEB - 8 1999

## MEMORANDUM OPINION

This action is before the court on several motions, including

defendant Beverly Enterprises, Inc.'s ("Beverly") motion to

dismiss, filed May 26, 1998. Plaintiff Michelle Spivey responded

to the motion to dismiss and filed her own separate motion for

summary judgment. By Order dated June 25, 1998, this court has

deemed Beverly's motion to dismiss to be a motion for summary

judgment pursuant to Rule 56 of the Federal Rules of Civil

Procedure. Pursuant to a stipulation filed September 30, 1998, the

parties have consented to the exercise of jurisdiction by the

undersigned pursuant to 28 U.S.C. § 636(c). The motions have been

briefed and both parties have submitted affidavits and deposition

40

testimony in support of or in opposition to the dispositive motions.

## Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving

-2-

party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, she may not merely rest on her pleadings. Celotex, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

-3-

(1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc.,

-4-

849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movants is to be believed and all justifiable inferences are to be drawn in his favor. Anderson, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## Undisputed Facts

The essential facts relevant to the dispositive motions are undisputed. Ms. Spivey, the plaintiff, was hired in June of 1996 as a certified nurse's assistant at a nursing home in Boaz, Alabama, operated by Beverly, the defendant. As a nurse's assistant, Ms. Spivey was assigned to work with ill and elderly patients. Her duties in that capacity at times required her to lift or move patients, at least one of whom weighed more than 200 pounds.

While employed by Beverly, Ms. Spivey learned that she was pregnant. Soon after learning that she was pregnant, Ms. Spivey became unable and/or unwilling to do any heavy lifting. As a result, Ms. Spivey requested that Beverly assign her to "light duty", or adjust her assignment so that she would not have to

-5-

perform the lifting duties that were part of her job as a nurse's assistant.    On October 14, 1996, Ms. Spivey's obstetrician recommended that the plaintiff not lift anything heavier than 25 pounds.    Upon receipt of the doctor's restrictions, Beverly told Ms. Spivey that it would not provide a light duty assignment for her.  As a result, Ms. Spivey's employment was terminated.[1]

The plaintiff sought administrative relief through the Equal Employment Opportunity Commission and on July 28, 1997, the EEOC issued a reasonable cause determination in favor of Ms. Spivey.  On March 3, 1998, Ms. Spivey commenced this action, claiming that Beverly's denial of a light duty job for the plaintiff constituted disparate treatment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e).  Beverly responded by filing its motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on May 26, 1998.  Ms. Spivey sought leave to amend her complaint on August 13, 1998.  Leave was granted by this court, and plaintiff added a claim entitled "disparate impact", which alleges that the defendant's policy regarding light duty assignments is facially discriminatory. In essence, Ms. Spivey alleges that: (1)

---

[1]     The defendant contends that plaintiff quit her job after her request for light duty was refused.    For purposes of this opinion, the court accepts plaintiff's contention that she was fired.

-6-

Beverly's refusal to assign her to light duty was discrimination based on her pregnancy; and (2) that Beverly's policy of providing light duty assignments only to employees who were injured on the job violates Title VII.

## Ms. Spivey's Motion for Summary Judgment

On June 12, 1998, plaintiff filed her motion for summary judgment, contending that defendant is liable for discrimination, pursuant to the Pregnancy Discrimination Act, because defendant limited the availability of light duty assignment solely to employees who had been injured on the job.   In other words, plaintiff takes the position that employer is required to offer the same benefits to pregnant employees that it offers to employees injured in the workplace.[2]   In support of that motion, plaintiff relies on the defendant's admission (contained in affidavits of Beverly employees) that light duty assignments are available only for employees who are either unable to perform their duties because

---

[2]      Plaintiff's motion does not specify whether the summary judgment is sought as to the claim of disparate treatment set forth in Count I of the Amended Complaint, or the claim that the policy is discriminatory on its face as set forth in Count II, although the language of the motion indicates that this motion is, and most appropriately should be, construed as a motion for summary adjudication of a claim that the defendant's modified duty policy is facially discriminatory. This court addresses the plaintiff's motion as if summary adjudication were sought on both of plaintiff's claims.

-7-

of an injury that occurred in the workplace, or (possibly) because they are disabled as defined by the Americans with Disabilities Act. Plaintiff cites to <u>Byrd v. Lakeshore Hospital</u>, 30 F.3d 1380, 1382 - 84 (11th Cir. 1994) in support of this proposition.

> 1.    Plaintiff has failed to meet her burden of establishing that defendant's modified duty policy is discriminatory on its face.

In 1978, Congress passed the Pregnancy Discrimination Act ("PDA"), which provides, in relevant part:

> The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work....

42 U.S.C. §2000e(k). The PDA was enacted in response to the Supreme Court's holding in <u>General Electric Co. v. Gilbert,</u> 429 U.S. 125 (1976), which concluded that discrimination based on sex did not include discrimination based on pregnancy. Since the PDA became law, it has become well settled that Title VII is violated when an employee is denied benefits on the basis of pregnancy. <u>See</u> <u>International Union UAW v. Johnson Controls</u>, 499 U.S. 187, 197 (1991); <u>Newport News Shipbuilding & Dry Dock Co. v. EEOC</u>, 462 U.S.

-8-

669, 678-79 (1983). It has further been established that the analysis required for a claim based upon pregnancy discrimination is the same analysis as would apply to other Title VII sex discrimination claims. See <u>Armstrong v. Flowers Hospital, Inc.</u>, 33 F.3d 1308, 1315 (11th Cir. 1994); <u>Maddox v. Grandview Care Ctr.</u>, 780 F.2d 987, 989 (11th Cir. 1986).

To prevail on a claim of disparate impact, a plaintiff must (1) identify the employment practice that is allegedly discriminatory; and (2) establish causation by showing that the practice has resulted in prohibited discrimination. <u>Armstrong</u>, 33 F.3d at 1314. Disparate impact cases generally arise from statistical disparities that raise an inference of discrimination. <u>Id.</u> However, plaintiff has failed to offer any statistical disparities that might evidence that the policy has been applied a manner that discriminates on the basis of pregnancy.

Plaintiff has identified the defendant's "Modified Duty Policy" as the discriminatory practice of which she complains. The defendant has offered evidence that Beverly provides modified duty "for associates with a work related injury" and defines its purpose as "arranging for injured associates to return to work ... to prevent severe wage losses ... and lower the overall cost of workers' compensation". Defendant admits that the policy is

applicable only to employees who have been injured in work-related incidents, but correctly acknowledges that similar policies that limit the availability of light duty to employees with occupational injuries have been scrutinized and have been found not to violate the PDA. <u>Urbano v. Continental Airlines,</u> 138 F.3d 204, 208 (5th Cir. 1998).[3]

    To prevail on her disparate impact claim, plaintiff would have to persuade this court that the PDA requires the defendant to offer pregnant employees the same benefits offered to employees who have been injured at work. This court is not persuaded. The clear holding in <u>Urbano</u> states that "the PDA does not entitle pregnant employees with non-work related infirmities to be treated the same under [the defendant's] light-duty policy as employees with occupational injuries." <u>Id.</u> Consequently, defendant's policy is not discriminatory on its face, and plaintiff's motion for summary judgment on her disparate impact claim is due to be denied.

---

    [3]    Defendant also cites to the unpublished opinion of the Fourth Circuit Court of Appeals, <u>White v. Frank</u>, 1993 U.S. App. LEXIS 27066 (1993), in which the district court's finding of liability was reversed where plaintiff failed to show that any similarly situated worker had been given light duty, and that the defendant's policy was to allow light duty assignments only for workers injured on the job.

> 2. Plaintiff has failed to show that her pregnancy was a substantive cause of the defendant's denial of plaintiff's request for light duty, as required to sustain a claim of disparate treatment.

Plaintiff has argued that the Eleventh Circuit Court of Appeals' opinion in <u>Byrd</u> dictates that the defendant be found liable of discrimination prohibited by the PDA. Plaintiff's reliance on that case is misplaced.

In <u>Byrd</u>, the plaintiff challenged her termination from a hospital, alleging that the hospital discriminated against her based on her pregnancy. The plaintiff was fired after she was absent from work repeatedly for reasons arising from her pregnancy. At the same time, her supervisor began to express dissatisfaction with her performance and her willingness to accept supervision. The plaintiff had accumulated sufficient sick leave time under the hospital's policy to cover all of her absences, and the defendant did not allege that the plaintiff abused the sick leave policy in any way. The defendant did concede, however, that one reason it discharged the plaintiff was her use of sick leave for conditions that were related to pregnancy. Because the district court found that the plaintiff's use of sick leave for her pregnancy-related conditions was "a substantive cause" of the discharge and the defendant did not challenge that finding, the appellate court

-11-

determined that the defendant had discriminated on the basis of pregnancy.  Byrd, 30 F.3d at 1383.

In this case, the defendant does not concede that Ms. Spivey's pregnancy was a factor, of any degree of importance, in its denial of light duty assignment.  To the contrary, Beverly has offered substantial evidence that light duty assignments were determined solely on the basis of whether the employee seeking the light duty had been injured in the workplace.  As discussed infra, Ms. Spivey has failed to demonstrate that her pregnancy was a substantive cause of the denial, and for purposes of the plaintiff's motion, this court must believe the evidence of the defendant.  Anderson, 477 U.S. at 255.  Therefore, plaintiff's contentions that the defendant's modified duty policy is violative of the PDA are not well founded, and Ms. Spivey's motion for summary judgment on the disparate treatment claim of the Amended Complaint is due to be denied.

### Beverly's Motion for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Beverly has moved this Court to enter a judgment in its favor on the pleadings, declaring that Ms. Spivey has failed to state a claim

-12-

upon which relief may be granted.[4]  Because defendant has offered evidence in support of its motion outside of the pleadings, this court therefore construes the motion as one brought  pursuant to Federal Rule of Civil Procedure 56.[5]

For all the reasons discussed *supra* in determining the disposition of the plaintiff's motion for summary judgment, this court finds that the defendant's motion for summary judgment on the disparate impact claim of the Amended Complaint is due to be granted.

> ## 2.  Plaintiff has failed to meet her burden of presenting substantial evidence that the defendant denied plaintiff a benefit it commonly afforded temporarily disabled workers of similar ability or inability to work.

This court's determination that Beverly's policy of reserving light duty assignments for employees who have been injured on the job is not, in and of itself, violative of Title VII does not

_____

[4]     Defendant on September 8, 1998, filed a motion to dismiss the amended complaint.  This court incorporates that motion into defendant's motion for summary judgment and rules on both herein.

[5]     Plaintiff on September 9, 1998, filed a motion to delay ruling on summary judgment in order to allow two additional weeks for plaintiff to obtain discovery from the defendant  .  Because that time period has passed, that motion is, therefore, MOOT. Plaintiff also objected to defendant's affidavit of James Zoesch as untimely.  This court has considered all evidence submitted by both the plaintiff and defendant and finds plaintiff's objection is due to be OVERRULED.

necessarily preclude Ms. Spivey from maintaining a claim against her employer under the PDA.   However, in order to do so, the plaintiff must provide evidence that either: (1) the employer's actions were motivated by the fact that the plaintiff was pregnant, or (2) similarly situated nonpregnant workers were given the benefit that plaintiff was denied.   See Byrd, 30 F.3d at 1382-83.

Generally, a plaintiff alleging disparate treatment must establish that the employer intended to discriminate against the protected group - in this case, pregnant women.   See Armstrong, 33 F.3d at 1313.   This element may be based on direct evidence of discriminatory intent, as the court found existed in Byrd, or through circumstantial evidence from which an inference of intentional discrimination may be drawn.   Armstrong, 33 F.3d at 1313.   An inference may arise from the way a policy is applied. Id.   To support this inference, the plaintiff may allege that the nondiscriminatory reason the defendant offers in defense of a policy that is not discriminatory on its face is merely a "pretext" for impermissible discrimination.   Armstrong, 33 F.3d at 1313 - 14.

Ms. Spivey has failed to offer any direct evidence that would indicate that Beverly denied light duty to Ms. Spivey because she was pregnant.   In other words, plaintiff has offered no direct evidence of discriminatory intent.   On the other hand, Beverly has

-14-

offered substantial evidence that shows the reason behind its modified duty policy is to prevent losses to the company arising from employees who are unable to work because of occupational injuries. Specifically, the affidavit of James Zoesch indicates that its policy is effective in reducing time lost by workers compensation claimants, and that it would not be economically or practically feasible for Beverly to extend the policy beyond the claimants, because of the limited amount of light duty tasks available. In light of the defendant's showing, the burden reverts to the plaintiff to show that the nondiscriminatory reason offered by the defendant is a pretext.

The burden shifting analysis to be employed here was explained by the Eleventh Circuit Court of Appeals in Combs v. Plantation Patterns, 106 F.3d 1519 (1997). Once the plaintiff has met the initial burden or coming forward with sufficient evidence to support a *prima facie* case, the burden shifts to the defendant to provide a nondiscriminatory reason for the challenged action. The defendant may meet that burden by producing admissible evidence "that would allow the trier to fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." Id. At 1528 (quoting Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 257(1981)). Once the defendant has done so,

the plaintiff, either through evidence already presented in support

of her *prima facie* case, or through an additional showing, must

persuade the court that a discriminatory reason "more likely

motivated the employer," or that the employer's stated reason is

"unworthy of credence". Combs, 106 F.3d at 1530 (quoting Burdine,

450 U.S. at 256). If the plaintiff fails to introduce evidence

sufficient to permit the court to disbelieve the employer's stated

nondiscriminatory reasons, summary judgment in favor of the

employer is appropriate because the plaintiff has not demonstrated

the existence of an issue of material fact that must be determined

by the jury. See id.[6]

Ms. Spivey has failed to cast sufficient doubt on the

employer's proffered reason for implementing the modified duty

policy to create a genuine issue of material fact. Even in the

absence of direct evidence of motive or causation, Ms. Spivey could

meet her burden by showing that Beverly applied its policy

differently to nonpregnant employees than to pregnant employees.

---

[6] In evaluating the propriety of a motion for judgment as a
matter of law, the court in Combs noted that the court must focus
its evaluation on "whether the plaintiff has demonstrated 'such
weaknesses, implausibilities, inconsistencies, incoherencies, or
contradictions in the employer's proffered reasons that a
reasonable factfinder could find them unworthy of credence.'" Id.
at 1537 (quoting Sheridan v. E.I. DuPont De Nemours & Co., 100 F.3d
1061, 1072 (3d Cir. 1996)).

Ms. Spivey attempts to meet this burden by alleging that the policy she challenges has been applied to nonpregnant workers who were otherwise ineligible for light duty because their injuries did not occur on the job. Specifically, Ms. Spivey alleges that Beverly assigned light duty to nonpregnant workers who had not been injured on the job, in violation of its own policy. However, this allegation is not supported by the evidence placed before this court.

The affidavits and testimony of the plaintiff do not indicate that plaintiff has any personal knowledge of any instance of differential application.[7] The fact that Ms. Spivey was not aware of Beverly's policy is unfortunate, but irrelevant to the analysis required here.[8] The affidavit of Staci Ragland, offered by the plaintiff, supports the defendant's contention that the policy was

---

[7]     Plaintiff's testimony that pages from defendant's manual listing light duty tasks had been placed on a bulletin board in the workplace is insufficient to support her claim of differential application.

[8]     Plaintiff's testimony that she was told to procure the doctor's letter, and that she was told, wrongly, that she would not be required to lift if she had such a letter from her doctor, might be relevant to a state law fraud claim. However, nothing in the record indicates that this misinformation was intended to discriminate against the plaintiff on the basis of her pregnancy and is, therefore, insufficient to bolster her Title VII claims.

applied only to employees who had been injured on the job. Furthermore, the fact that even supervisors were not made aware of Beverly's modified duty policy, while regrettable, does not support an inference that Beverly applied that policy in a discriminatory manner. Similarly, excerpts from the depositions of the plaintiff, Janet Hasse, and Martha Williams, fail to substantiate the allegation that the defendant applied its policy to a similarly situated nonpregnant employee.

Ms. Spivey comes closer to showing that pregnant employees are treated differently than nonpregnant employees with respect to Beverly's modified duty policy through the affidavit of Mary Duran, a former Beverly employee who underwent a surgery that required her to abstain from lifting while recuperating, and who sought a light duty assignment from the defendant. However, Ms. Duran's testimony clearly indicates that the defendant adhered to its policy, limited the application of the modified duty plan to workers who were hurt on the job, and denied Ms. Duran's request. The affidavit could be read to hint that Ms. Duran was essentially allowed to work under light duty conditions. Such insinuation is simply insufficient evidence from which this court could determine that the policy has been differentially applied to the plaintiff. Although the affidavit evidences that Ms. Duran received restrictions from her

-18-

doctor similar to plaintiff's restrictions, there is no indication that Ms. Duran was unable or unwilling to perform the lifting requirements of her job, or that Ms. Duran did not, in fact, perform her job in the same manner as she had before the surgery. The plaintiff, on the other hand, admitted that she was both unwilling and unable to perform the lifting that she admits was an important function of her job.

Ms. Spivey asks this court to infer, based on the testimony that Ms. Duran was told to "do the best [she] could", that Ms. Duran received the light duty assignment that she sought despite her ineligibility under the defendant's modified duty policy. Again, plaintiff has fallen short of offering sufficient evidence from which a reasonable jury could infer that plaintiff's scenario reflects what actually occurred. Notably absent is any evidence that Ms. Duran was permitted to escape any of the lifting or pulling tasks required by the job. Consequently, this court must infer that Ms. Duran "did her best" and was able to do her job without any special accommodation by her employer. The court has been provided evidence to support this inference. Beverly offered testimony that Ms. Duran was never given light duty, evidencing that the plaintiff was treated the same as Ms. Duran. This conclusion is further bolstered by the plaintiff's affidavit of

-19-

Staci Ragland, who testified that she was aware of light duty being assigned to one worker, and that that worker had been injured on the job. Additionally, documents offered by the defendant indicate that light duty assignments were given only to workers compensation claimants.

In light of the defendant's evidence supporting its nondiscriminatory reason behind its modified duty policy, the plaintiff bears the burden of coming forward with evidence that the defendant adhered to the requirements of its own light duty policy "only in cases involving its pregnant workers". <u>Urbano</u>, 138 F.3d at 206. Plaintiff has failed to meet this burden. Consequently, construing all the evidence in a light most favorable to the plaintiff, the court determines that no reasonable jury could find that Beverly's modified duty policy was applied in a manner that constitutes a violation of the PDA and the defendant's motion for summary judgment is due to be granted.

## Conclusion

Accordingly, consistent with the foregoing discussion of the evidence presented by both parties in support of and in opposition to the competing motions for summary judgment, this court determines:

1.    That Ms. Spivey's motion for summary judgment against Beverly is due to be DENIED;

2.    That Beverly's motion for summary judgment against Ms. Spivey is due to be GRANTED, and judgment is hereby entered dismissing all of plaintiff's claims with prejudice.

A separate order will be entered in accordance with the findings set forth herein.

Dated the 5th day of February, 1998.

T. MICHAEL PUTNAM
CHIEF MAGISTRATE JUDGE

-21-